UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIELLE MICHELLE BOSTON,

          Plaintiff,

    v.                                               16-CV-342
                                                    DECISION AND ORDER
NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

          Defendant.

_____

      The plaintiff, Danielle Michelle Boston, brought this action under the Social

Security Act ("the Act").  She seeks review of the decision of the Acting Commissioner

of Social Security ("the Commissioner") that she was not disabled within the meaning of

the Act.  Docket Item 1; Tr. 14-15.[1]  On November 9, 2016, this Court referred this case

to United States Magistrate Judge Hugh B. Scott.  Docket Item 9.

      On November 8, 2016, Boston moved for judgment on the pleadings, Docket

Item 8, and on February 9, 2017, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 13.  On August 2, 2017, Judge Scott issued a

Report and Recommendation ("R&R") finding that Boston's motion for judgment on the

pleadings should be denied and that the Commissioner's cross-motion for judgment on

the pleadings should be granted.  Docket Item 16.

      On August 16, 2017, Boston objected to the R&R, Docket Item 17, and the

Commissioner responded to Boston's objections on August 30, 2017. Docket Item 19.

_____

[1] Citations to Tr. ___ refer to the administrative record—i.e., Docket Item 7.

Oral argument was held on October 26, 2017, and this Court reserved decision. Docket Item 23. For the reasons stated below, this Court now adopts the R&R, denies Boston's motion, and grants the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On October 14, 2011, Boston applied for Social Security Disability Insurance benefits ("SSDI"). Tr. 126. She claimed that she had been disabled since August 2010 due to a motor vehicle accident that caused post-traumatic stress disorder, vertebrogenic disorders, pain that radiated to her upper and lower extremities, migraine headaches, nerve damage of the bilateral upper extremities due to cervical spine dysfunction, pain in the lumbar portion of her spine, anxiety, and depression. Tr. 20. On January 26, 2012, Boston received notice that her application was denied because she was not disabled under the Act. Tr. 11.

Boston requested a hearing before an administrative law judge ("ALJ"), Tr. 86-87, which ALJ Nancy L. Pasiecznik held on March 7, 2013, and April 8, 2013. Tr. 11. After ALJ Pasiecznik retired, ALJ Donald T. McDougall was assigned to take her place.[2] *Id.* On September 22, 2014, a third hearing day was held. *Id.* ALJ McDougall then issued a decision on December 3, 2014, confirming the initial finding that Boston was not disabled under the Act. Tr. 8. Boston's appeal was denied, and the decision

---

[2] ALJ McDougall assumed the duty to issue a decision under Hearings, Appeals, and Litigation Law (HALLEX) § 1-2-8-40. *See* SOC. SEC. ADMIN., HEARINGS, APPEALS, AND LITIGATION LAW VOLUME I § 1-2-8-40 (2011). The Social Security Administration publishes HALLEX as a manual to provide guiding principles, procedural guidance, and information to the Office of Hearings and Appeals staff.

became final on February 29, 2016.  Tr. 1.  On November 8, 2016, Boston filed this action, asking this Court to review the ALJ's decision.  Docket Item 1.

## II.  RELEVANT MEDICAL EVIDENCE

Although this Court adopts Judge Scott's careful and thorough recitation of the facts, it provides the following summary of the medical evidence most relevant to Boston's objections.

### A.  Donna Miller, D.O.

On November 16, 2010, Donna Miller, D.O., performed a consultative internal medicine examination of Boston at the request of the Commissioner.  Tr. 19, 497-500. Although most of the tests administered were negative, Dr. Miller noted a "mild limitation" for repetitive heavy lifting, bending, and carrying, as well as some extension limitations.  Tr. 500.

### B.  Baljinder Singh, M.D.

Over the next three months, Boston had several follow-up appointments with Baljinder Singh, M.D.  Tr. 590-94, 649.  During these visits, Dr. Singh concluded that Boston had "right-sided moderate to severe carpal tunnel syndrome" but that she demonstrated full strength and normal reflexes.  Tr. 590-94, 649.  In February 2011, Dr. Singh ordered an MRI, which revealed a small to moderate disc herniation at C5-C6. Tr. 589.

### C.  Jody Leonardo, M.D.

Dr. Singh's disc herniation finding was confirmed on April 26, 2011, by a neurosurgeon, Jody Leonardo, M.D.  Dr. Leonardo noted that although there was

evidence of foraminal stenosis—a narrowing of the cervical disc space—on the left side, there was not necessarily evidence of the same on the right side. Tr. 633. Dr. Leonardo also found evidence of possible C5-C6 subacute radiculopathy on Boston's left side and noted that Boston "clearly has carpal tunnel symptoms . . . and signs [that are] significant with this." Tr. 636. At this point, Boston chose not to have surgery for either her right-side radiculopathy or her carpal tunnel syndrome. *Id.* Dr. Leonardo examined Boston again on September 2, 2014, and opined on Boston's extremity discomfort but reported that she could not "identify the structural cause based on her most [sic] MRI." Tr. 1097-98.

### D.    Guatam Arora, M.D.

At the request of the Commissioner, Guatam Arora, M.D., examined Boston on December 20, 2011, for a second consultative internal medicine examination. Dr. Arora found some limited range of motion but no sensory deficit. Tr. 751. Dr. Arora also found that Boston had full strength in her upper and lower extremities except for slightly reduced grip strength on the left side. *Id.* Dr. Arora concluded that Boston had a "moderate limitation of activity requiring complete ROM of C-Spine motion" and a "moderate limitation of bending, twisting, lifting, and carrying." Tr. 752.

### E.    Edward Layne, M.D.

Boston also met with a state agency neurosurgery consultant, Edward Layne, M.D., on May 24, 2012. Tr. 806. Dr. Layne reviewed the entire medical record as well as the physical residual functional capacity assessment by disability examiner "C. Wahl" conducted on January 24, 2012. Tr. 175-180. Dr. Layne also evaluated several of Boston's conditions, including numbness in both hands, high blood pressure, head

injuries, and post-traumatic stress disorder. Dr. Layne affirmed the assessment that "C. Wahl" completed on January 24, 2012, Tr. 806, which found that Boston had full strength and no sensory deficits, Tr. 176.

### F.     Tomas Holmlund, M.D.

On July 30, 2014, Tomas Holmlund, M.D., a neurologist, conducted an EMG and nerve conduction study of the right upper extremity. The EMG revealed no evidence of carpal tunnel syndrome. Tr. 1089.

### G.     Rachel Sisson, D.P.T.

Prior to Boston's meeting with Dr. Holmlund, Boston met with Rachel Sisson, D.P.T. Sisson is a physical therapist, and she provided the record's only evidence of motor loss. Tr. 1103-04. Sisson's notes indicate that Boston's strength level decreased to a 4 out of 5 in the upper extremities. *Id.*

## III.     THE ALJ'S DECISION

In denying Boston's application for SSDI, the ALJ analyzed her claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ found at step one that Boston was not engaged in gainful employment. At step two, the ALJ found that Boston had the following severe

impairments: post-traumatic disorder; vertebrogenic disorder; back problems that caused pain radiating to her upper and lower extremities; anxiety; and depression. Tr. 13. At step three, the ALJ found that Boston does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in the appendix, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Tr. 14.

The ALJ then found that Boston was unable to perform any part of her past relevant work, but he also found that she was capable of working in the existing national economy based on her work experience, age, education, and RFC. The ALJ noted Boston's limitations and suggested necessary accommodations, including: (1) needing to change positions briefly (1-2 minutes) at least every half hour; (2) flexing her neck only occasionally; and (3) not having more than frequent contact with coworkers or supervisors and only occasional contact with the general public. Tr. 16. But the ALJ identified several occupations in which Boston could find employment, such as mail clerk or film touch-up inspector. Tr. 33.

Boston's objections to the R&R, which repeat her arguments to Judge Scott, focus on the ALJ's finding at step three. Boston argues that substantial evidence indicated that she suffered from continued manipulative limitations noted in the RFC assessment. Docket Item 17 at 1, 2. For that reason, Boston argues that Judge Scott should have found that the ALJ erred at step three by excluding Boston's cervical spine disc injury from coverage under medical listing 1.04(A). *Id.* at 1, 10.

## LEGAL STANDARDS

## I. DISTRICT COURT REVIEW

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Because Boston has objected here, this Court reviews de novo the portions of the R&R to which Boston objected.

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

**<u>DISCUSSION</u>**

Boston argues that the ALJ erred first in rejecting the favorable portions of the opinion of Dr. Layne, and then in not adequately considering her cervical spine disc injury under medical listing 1.04(A).  Docket Item 17 at 2, 10.   But the ALJ properly discounted the favorable portions of Dr. Layne's findings and explained the reasons for doing so.  Moreover, the ALJ's conclusion that Boston's cervical spine disc injury did not fall under medical listing 1.04(A) is supported by substantial evidence in the record. Therefore, Boston's objections to the R&R—which are really restatements of her arguments to the magistrate judge—fail, and the Commissioner's motion is granted.

## I.    DR. LAYNE'S FINDINGS

Boston maintains that the ALJ erred in failing to properly consider the favorable portions of Dr. Layne's report noting nerve damage in the upper extremities.  But that assertion is unfounded.  In fact, medical examinations of Boston repeatedly demonstrated no cervical spine limitations from nerve damage that would justify a disability determination.  *See, e.g.*, Tr. 19, 21, 22-23, 31-32, 63-64, 744-45.

Dr. Layne did note some manipulative limitations.  Tr. 177.  But the ALJ weighed that evidence against several more detailed reports indicating that these limitations did not render Boston disabled.  For example, Dr. Singh's examination revealed full strength in the upper extremities.  Tr. 24-25.  Dr. Leonardo's report included the same finding, as well as "strong grip strength."  Tr. 25-26.  The ALJ expressly noted Dr. Layne's finding that "all studies in the record, as well as examination, were normal,"  Tr. 31, and he found that "neurosurgery [which is also Dr. Leonardo's specialty] seems an appropriate specialty to place extra reliance on."  *Id.*  And the ALJ observed that the

9

opinions of the consultants who examined Boston were consistent with the results of examinations by her treating physicians. So contrary to Boston's argument, the ALJ indeed considered and weighed Dr. Layne's conclusions. Tr. 16-31.

Boston also argues that the ALJ failed to consider the *combination* of the listed impairments when finding that Boston could still find employment. Docket Item 17 at 3. But the ALJ's analysis belies this objection as well. First, the ALJ reviewed all the medical evidence in the record, finding, as the evidence shows, several severe impairments. Tr. 13. Second, the ALJ found that the severe impairments affected Boston's ability to work—so much so that she will have certain limitations and will need accommodations in any future employment. Tr. 16. Nevertheless, the ALJ found that Boston's condition—including her limitations—permitted her to hold future employment in a job existing within the national economy. That conclusion was both reasonable and supported by far more than a scintilla of evidence.

Because the ALJ's finding that Boston could attain future employment was supported by substantial evidence, and because the ALJ appropriately addressed Dr. Layne's report in determining Boston's RFC, this Court will not disturb the ALJ's finding. *See Talavera*, 697 F.3d at 151.

## II.    SECTION 1.04(A)

Boston also argues that her impairments met, or medically equaled, one of the listed impairments set forth in 1.04(A), which include disorders of the spine. But Judge Scott correctly agreed with the ALJ's determination that Boston's cervical spine impairment did not meet—nor was it the medical equivalent of—listing 1.04(A).

The examining physicians and the consultative specialists consistently reported full motor strength in the upper extremities—findings that are fatal to Boston's 1.04(A) argument.[3] Moreover, there is almost no evidence of motor loss in the record, and no evidence that the required criteria for listing 1.04(A) were present for a continuous twelve-month period as required under the Act. Docket Item 16 at 20-21, 23. As Judge Scott correctly noted, there is only one instance in the record that evidences any motor loss: Boston's examination by Rachel Sisson, a physical therapist who noted "mildly decreased strength (4 out of 5) in the upper extremities bilaterally." Tr. 1103. But the "ALJ has the discretion to determine the appropriate weight to accord the [medical] opinion[s] based on all of the evidence before him . . . ." *Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389 (W.D.N.Y. 2014), and in light of all the other evidence, the ALJ appropriately decided to give little weight to that isolated opinion. Tr. 16-32. The rest of the medical evidence in the record shows no motor loss.

Thus, substantial evidence supports the ALJ's finding—and Judge Scott's acceptance of that finding—that Boston did not meet, nor does she possess the medical equivalent of, one of the listed impairments under listing 1.04(A).

## CONCLUSION

The ALJ's decision was consistent with the evidence in the record and did not result from any legal error. Therefore, for the reasons stated above and in the R&R, this Court accepts and adopts Judge Scott's R&R, Docket Item, 16; Boston's motion for

---

[3] Critically, Dr. Leonardo's examination of Boston on September 2, 2014 showed full motor strength (5/5) in the upper extremities. Tr. 1048. This finding followed an EMG taken on July 30, 2014, showing no signs of carpal tunnel syndrome. Tr. 1089.

judgment on the pleadings, Docket Item 8, is DENIED; the Commissioner's cross-

motion for judgment on the pleadings, Docket Item 13, is GRANTED; and the Clerk of

Court shall close the file.


SO ORDERED.

Dated:      October 31, 2018
            Buffalo, New York


_s/ Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE